AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

F I L E D

SEP 1 3 2018

CLERK, US DISTRICT COURT
ALEXANDRIA, VIRGINIA

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

A SAMSUNG GALAXY S9+ (IMEI NO. 357633091101870), CURRENTLY LOCATED AT 2001 MILL ROAD, ALEXANDRIA, VIRGINIA 22314

)
)
)
)
)
)

Case No.  1:18-SW-556

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Knowing possession of a firearm, in and affecting commerce, by a person who has been convicted in a court of a crime punishable by imprisonment for a term exceeding one year |

The application is based on these facts:
See attached affidavit of Special Agent Jonathan F. Earle, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Tobias D. Tobler

_____
*Applicant's signature*

Jonathan F. Earle, Special Agent (ATF)
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  __9/13/18__

/s/
Michael S. Nachmanoff
United States Magistrate Judge
*Judge's signature*

City and state:  __Alexandria, Virginia__

Hon. Michael S. Nachmanoff, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be Seized and Searched*

The property to be seized and examined is a Samsung Galaxy S9+, international mobile equipment identity number 357633091101870, hereinafter the "Device." The Device is currently located at the Alexandria Adult Detention Center, 2001 Mill Road, Alexandria, Virginia 22314, in the Eastern District of Virginia.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT B

*Records to be Seized*

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g) and involve THOMAS RUSSO, since July 1, 2018, including:

  a.  Any records relating to the obtaining, secreting, transfer, concealment, possession and storage of firearms, including documents, notes, ledgers, receipts, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, and bank checks;

  b.  Any communications relating to the obtaining, secreting, transfer, concealment, possession and storage of firearms, including voice messages, text messages, and messages sent through electronic communication applications;

  c.  Any records reflecting names, addresses, and telephone numbers of the individuals with whom RUSSO may have had contact;

  d.  Photographs of firearms, ammunition, and firearm accessories, including photographs of RUSSO and/or other individuals in possession of these items, and photographs showing the associations of these individuals;

  e.  Any information recording RUSSO's schedule or travel from July 1, 2018 to August 21, 2018;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG GALAXY S9+ (IMEI NO. 357633091101870), CURRENTLY LOCATED AT 2001 MILL ROAD, ALEXANDRIA, VIRGINIA 22314 | (UNDER SEAL)<br><br>No. 1:18-SW-556 |

AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEIZE AND SEARCH

I, Jonathan F. Earle, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the seizure and examination of property— an electronic device—currently in the custody of the Alexandria Sheriff's Office, and the extraction from that property of electronically stored information described in Attachment B.

2.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for approximately nine years.  I am currently assigned to the Washington Field Division's Crime Gun Intelligence Center (CGIC).  My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking.  As part of these investigations, I have analyzed phone and internet records, and participated in the search and seizure of electronic devices, including cellular phones and "smart" phones.

3.      The facts and information contained in this affidavit are based upon my personal knowledge, as well as information and evidence obtained from other law enforcement officials and witnesses.  This affidavit contains information necessary to support probable cause for this

application. I have not included each and every fact and matter observed by me or known to the government.

IDENTIFICATION OF THE DEVICE TO BE SEIZED AND EXAMINED

4. The property to be seized and examined is a Samsung Galaxy S9+, international mobile equipment identity number 357633091101870, hereinafter the "Device." The Device is currently located at the Alexandria Adult Detention Center, 2001 Mill Road, Alexandria, Virginia 22314, in the Eastern District of Virginia.

5. The applied-for warrant would authorize the seizure and forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

PROBABLE CAUSE

A.    Use of Phones by Unlawful Possessors of Firearms

6. From my training and experience, I know that individuals who possess firearms—including those who possess them unlawfully—commonly maintain on their personal electronic devices (including cellular telephones), electronic and photographic records relating to the obtaining, secreting, transfer, concealment, possession, and storage of these firearms, including: documents, notes, ledgers, receipts, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, and bank checks.

7. From my training and experience, I also know that individuals who possess firearms—including those who possess them unlawfully—commonly maintain on their personal electronic devices (including cellular telephones), communications and records of communications relating to the obtaining, secreting, transfer, concealment, possession, and

2

storage of these firearms, including voice messages, text messages, and messages sent through electronic communications applications.

8.     From my training and experience, I also know that individuals who deal in the sale or purchasing of firearms commonly maintain on their personal electronic devices (including cellular telephones), records that reflect the names, addresses, and telephone numbers of the individuals with whom they conduct such transactions.

9.     From my training and experience, I also know that individuals who possess firearms—including those who possess firearms unlawfully—commonly maintain on their personal electronic devices (including cellular telephones), photographs of firearms, ammunition, and firearm accessories, as well as photographs of individuals (including the device user and associates) in possession of these items.

B.     THOMAS RUSSO's Unlawful Possession of Firearms

10.    On or about September 11, 2014, THOMAS JOSEPH RUSSO was convicted in the Circuit Court for the City of Alexandria of malicious wounding, in violation of Va. Code § 18.2-51, an offense punishable by imprisonment for a term exceeding one year. RUSSO completed his term of incarceration in or around July 2018.

11.    On or about August 15, 2018, a Probation Officer for the Alexandria Circuit Court ("APO") contacted law enforcement regarding RUSSO's criminal activities. According to the APO, during RUSSO's period of incarceration, RUSSO had threatened an Assistant Commonwealth's Attorney ("ACA") in connection with RUSSO's 2014 malicious wounding conviction. Following his release from prison, RUSSO went to the Commonwealth Attorney's office in an attempt to speak to the ACA.

3

12.     The APO further advised law enforcement that, as a condition of RUSSO's post-release supervision, the APO had placed a Global Positioning System (GPS) monitoring device on RUSSO's person.  According to the APO, on or about August 14, 2018, RUSSO's GPS monitoring device was located in the vicinity of SpecDive Tactical ("SpecDive")—a federal firearms licensee in Alexandria, Virginia, within the Eastern District of Virginia.

13.     On or about August 20, 2018, ATF investigators interviewed SpecDive's manager ("W-1") regarding RUSSO.  W-1 advised law enforcement that, on August 14, 2018, an individual identified as RUSSO[1] entered SpecDive, discussed with W-1 potential firearms purchases, and handled multiple firearms.  Specifically, RUSSO asked W-1 to provide a price quote for a custom-designed AR-15 style pistol.  RUSSO and W-1 thereafter discussed the individual parts RUSSO would need to purchase in order to build the firearm, and W-1 provided a total price quote of approximately $4,100.  According to W-1, as RUSSO and W-1 discussed the design of the custom firearm, RUSSO physically handled W-1's personally-owned AR-15-style pistol.

14.     As W-1 further advised law enforcement, RUSSO also inquired about purchasing a Colt firearm.  According to W-1, RUSSO handled a Colt Python .357 revolver, raising the firearm to his eye line to inspect the gun sight.

15.     On or about August 20, 2018, ATF investigators also interviewed a SpecDive sales associate/gunsmith ("W-2") regarding RUSSO.  W-2 informed law enforcement that, on

---

[1] During an interview with ATF investigators, W-1 identified this individual in a known photograph of THOMAS JOSEPH RUSSO.

August 14, 2018, W-2 observed an individual identified as RUSSO[2] inside SpecDrive. W-2 reported seeing RUSSO possess an AR-15-style firearm and a Colt Python .357 revolver while inside the store.

16.     On August 21, 2018, the APD arrested RUSSO for violating the conditions of his release. On the same date, an ATF investigator contacted RUSSO at the Alexandria Adult Detention Center. RUSSO waived his *Miranda* rights, and agreed to speak to the investigator. During the subsequent interview, RUSSO admitted that, while inside SpecDive, he had held an AR-15-style firearm and a Colt Python revolver.

17.     Based upon my training and experience, a Colt Python .357 revolver constitutes a firearm pursuant to Title 18, United States Code, Section 921(a)(3). Colt's Manufacturing Company, which manufactures this firearm, does not manufacture them in Virginia. Consequently, any Colt Python .357 revolver found in Virginia has traveled in interstate commerce from its point of manufacture into Virginia.

18.     The Device is currently in the lawful possession of the Alexandria Sheriff's Office. At the time of RUSSO's arrest, arresting officers found the Device on RUSSO's person. Law enforcement officers took custody of the Device from RUSSO, and then transferred custody of the Device—with RUSSO's other personal effects—to the Alexandria Sheriff's Office.

19.     The Device is currently in storage at the Alexandria Adult Detention Center, 2001 Mill Road, Alexandria, Virginia 22314. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation,

---

[2] During an interview with ATF investigators, W-2 identified this individual in a known photograph of THOMAS JOSEPH RUSSO.

in substantially the same state as they were when the Device first came into the possession of law enforcement.

20.   If authorized to seize and search the Device, an ATF investigator will conduct the search at 3600 Wheeler Avenue, Alexandria, Virginia, 22304, in the Eastern District of Virginia.

TECHNICAL TERMS

21.   Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

6

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated

7

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

8

borders, even when the devices communicating with each other are in the same state.

22.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

      a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

9

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

10

the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.    I submit that this affidavit supports probable cause for a warrant authorizing the seizure and examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Special Agent Jonathan F. Earle, ATF

Subscribed and sworn to before me
On this ___ day of September, 2018:
/s/
Michael S. Nachmanoff
United States Magistrate Judge
Hon. Michael S. Nachmanoff
United States Magistrate Judge

11

## ATTACHMENT A

### *Property to be Seized and Searched*

The property to be seized and examined is a Samsung Galaxy S9+, international mobile equipment identity number 357633091101870, hereinafter the "Device." The Device is currently located at the Alexandria Adult Detention Center, 2001 Mill Road, Alexandria, Virginia 22314, in the Eastern District of Virginia.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT B

*Records to be Seized*

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g) and involve THOMAS RUSSO, since July 1, 2018, including:

      a.  Any records relating to the obtaining, secreting, transfer, concealment, possession and storage of firearms, including documents, notes, ledgers, receipts, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, and bank checks;

      b.  Any communications relating to the obtaining, secreting, transfer, concealment, possession and storage of firearms, including voice messages, text messages, and messages sent through electronic communication applications;

      c.  Any records reflecting names, addresses, and telephone numbers of the individuals with whom RUSSO may have had contact;

      d.  Photographs of firearms, ammunition, and firearm accessories, including photographs of RUSSO and/or other individuals in possession of these items, and photographs showing the associations of these individuals;

      e.  Any information recording RUSSO's schedule or travel from July 1, 2018 to August 21, 2018;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.